**ORAL ARGUMENT NOT YET SCHEDULED**
No. 23-1204 (consolidated with No. 23-1166)

# In the United States Court of Appeals
# For the District of Columbia Circuit

American Chemistry Council, et al.,
*Petitioners,*

v.

Environmental Protection Agency,
*Respondent.*

ON PETITION FOR REVIEW FROM FINAL RULE OF THE UNITED STATES
ENVIRONMENTAL PROTECTION AGENCY, 88 FED. REG. 37,155 (JUN. 7, 2023)

**BRIEF OF THE CHAMBER OF COMMERCE OF THE UNITED
STATES OF AMERICA AND THE NATIONAL ASSOCIATION OF
MANUFACTURERS AS *AMICI CURIAE* IN SUPPORT OF
PETITIONERS**

Matthew Z. Leopold
Erica N. Peterson
Hunton Andrews Kurth LLP
2200 Pennsylvania Ave. NW
Washington, DC 20037
(202) 955-1932

Elbert Lin
  *Counsel of Record*
Hunton Andrews Kurth LLP
951 East Byrd Street, East Tower
Richmond, VA 23219
elin@huntonak.com
(804) 788-7202

*Counsel for* Amici Curiae
*Additional counsel listed below*

## <u>CERTIFICATE AS TO PARTIES, RULINGS,</u>
## <u>AND RELATED CASES</u>

In accordance with D.C. Circuit Rule 28(a)(1), *amici curiae* states as follows:

### I.      Parties and *Amici Curiae*

Except for the following, all parties, intervenors, and *amici* appearing in this Court are listed in the Brief for Petitioners at page i.

*Amici curiae* in support of Petitioners are the Chamber of Commerce of the United States of America and the National Association of Manufacturers.

### II.      Rulings Under Review

References to the rulings at issue appear in the Brief for Petitioners at page i.

### III.      Related Cases

*Amici curiae* are aware of no other related cases.

## <u>CORPORATE DISCLOSURE STATEMENT</u>

The Chamber of Commerce of the United States of America ("Chamber") is a non-profit, tax-exempt organization incorporated in the District of Columbia. The Chamber has no parent corporation, and no publicly held company has 10% or greater ownership in the Chamber.

The National Association of Manufacturers ("NAM") is a non-profit, tax-exempt organization incorporated in New York. The NAM has no parent corporation, and no publicly held company has 10% or greater ownership in the NAM.

## <u>TABLE OF CONTENTS</u>

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES ... i

CORPORATE DISCLOSURE STATEMENT ................................................ ii

TABLE OF CONTENTS ......................................................................... iii

TABLE OF AUTHORITIES ..................................................................... v

GLOSSARY ....................................................................................... x

STATUTES AND REGULATIONS ............................................................ 1

INTEREST OF AMICI CURIAE .............................................................. 1

INTRODUCTION AND SUMMARY OF ARGUMENT ............................... 3

ARGUMENT ...................................................................................... 4

   I.   EPA itself recognizes that the Rule risks third-party waiver of a company's confidential business information claims ................................................................................. 4

      A.   The Rule allows a company's confidential business information claims to be waived in downstream third-party reporting ........................................................ 4

      B.   EPA acknowledged this problem but failed to address the issue prior to implementing the Rule .................................. 9

   II.   EPA's promise to address this problem in future rules is contrary to TSCA § 14 .................................................... 10

      A.   TSCA § 14 prohibits what EPA has done here .......................... 10

      B.   EPA's attempts to justify its decision under TSCA are not responsive ................................................................ 16

   III.   EPA's promise of a future solution is also arbitrary and capricious ...................................................................... 18

      A.   The Rule's creation of a risk of waiver is irrational and unreasonable ............................................................... 19

      B.   EPA fails to acknowledge or address the significant harms caused by its Rule ........................................................ 20

Conclusion ...................................................................................... 25

Certificate of Compliance .................................................................. 27

Certificate of Service......................................................................27

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Am. Tel. & Tel. Co. v. FCC*, 978 F.2d 727, 733 (D.C. Cir. 1992)............20

*Arellano v. McDonough*,
598 U.S. 1 (2023) ..........................................................................12, 13

*Balmuccino, LLC v. Starbucks Corp.*, No. 2:22-cv-01501 (JHC),
2023 WL 4761447 (W.D. Wash. July 26, 2023)...................................22

*Bimbo Bakeries USA, Inc. v. Sycamore*, No. 213-cv-00748 (DN)
(DBP), 2018 WL 1578115 (D. Utah Mar. 29, 2018) ...........................22

*Burlington Truck Lines, Inc. v. United States*,
371 U.S. 156 (1962) ..............................................................................19

*DT-Trak Consulting, Inc. v. Kolda*, 979 N.W.2d 304 (S.D.
2022)........................................................................................................22

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
463 U.S. 29 (1983) ................................................................................19

*Nat'l R.R. Passenger Corp. v. Nat'l Ass'n of R.R. Passengers*,
414 U.S. 453, 458 (1974) .....................................................................14

*Perot v. FEC*, 97 F3d. 553, 559 (D.C. Cir. 1996).....................................14

*PPG Indus. v. Jiangsu Tie Mao Glass Co.*, 47 F.4th 156 (3d
Cir. 2022) ...............................................................................................22

*Praeses, LLC v. Bell*, 343 So.3d 933 (La. Ct. App. 2022)........................22

*Synopsys, Inc. v. Risk Based Sec., Inc.*, 70 F.4th 759 (4th Cir.
2023)........................................................................................................22

*Star Wireless, LLC v. Fed. Commc'ns Comm'n*, 522 F.3d 469
(D.C. Cir. 2008).....................................................................................20

*Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 152 (5th Cir. 1998) .......................................................................................13, 14

*Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1003–04 (1984) ...............22

*U.S. Cellular Corp. v. Fed. Commc'ns Comm'n*, 254 F.3d 78 (D.C. Cir. 2001) ................................................................................20

*Williamson v. Lee Optical Co.*, 348 U.S. 483 (1955) ...............................20

## Statutes

Federal Election Campaign Act, 2 U.S.C. § 437 (transferred to 5 U.S.C. § 30107) .........................................................................13, 14

Freedom of Information Act, 5 U.S.C. § 552(b)(4) ...................................12

Toxic Substances Control Act, 15 U.S.C. § 2601 et. seq ................... viii, 3

15 U.S.C. § 2602 .........................................................................................5

15 U.S.C. § 2604 .........................................................................................5

15 U.S.C. § 2607 .........................................................................................5

15 U.S.C. § 2613 .........................................................................5, 11-12, 15

28 U.S.C. § 5110 .......................................................................................12

## Other Authorities

40 C.F.R. § 2.208 .................................................................................14, 17

40 C.F.R. § 211.30 .................................................................................5, 9

40 C.F.R. § 704.20 .....................................................................................5

40 C.F.R. § 707.65 .....................................................................................5

40 C.F.R. § 710.25 .....................................................................................5

40 C.F.R. § 711 ...........................................................................................5

vi

40 C.F.R. § 711.8 ................................................................8

40 C.F.R. § 716 ..................................................................5

*The Business of Chemistry by Numbers*, AMERICAN CHEMISTRY
    COUNCIL, https://tinyurl.com/52cwv5zh (last visited Oct. 20,
    2023)................................................................................23

Confidential Business Information Claims Under the Toxic
    Substances Control Act (TSCA), 88 Fed. Reg. 37,155–174
    (June 7, 2023) ("Rule") ....................................6, 8-10, 16, 20

David H. Siegel, *The Way to Protect Your Business? What You
    Need to Know About Trade Secrets*, THE NATIONAL LAW
    REVIEW (Jun. 24, 2022), https://tinyurl.com/ysdm884n .....................21

John Hull, *Protecting trade secrets: how organizations can
    meet the challenge of taking "reasonable steps,"* WORLD
    INTERNATIONAL PROPERTY ORGANIZATION MAGAZINE (Oct.
    2019), https://tinyurl.com/ycxtmhvt .................................22

Katherine Linton, *The Importance of Trade Secrets: New
    Directions in International Trade Policy Making and
    Empirical Research*, U.S. INT'L TRADE COMM. J. OF INT'L
    COMM. AND ECON. 2 (Sept. 2016),
    https://tinyurl.com/ypr65yvz...............................................21

Memorandum for the Heads of Executive Departments and
    Agencies from Richard L. Revesz, Administrator of OIRA
    (July 19, 2023), https://www.whitehouse.gov/wp-
    content/uploads/2023/07/Broadening-Public-Participation-
    and-Community-Engagement-in-the-Regulatory-
    Process.pdf ....................................................................25

Prepublication Notice, TSCA Inventory Notification (Active-
    Inactive); Reopening of the Reporting Period (Jan. 5, 2021)
    at 3, Dck. No. EPA-HQ-OPPT-2016-0426 ...........................24

*Pipeline Safety Voluntary Information-Sharing System
    Recommendation Report* (Apr. 2019), https://bit.ly/3aUcOTF ...........25

Response to Comments to the Proposed Rule and
Supplemental Rule-Procedures for Review of CBI Claims
for the Identity of Chemicals on the TSCA Inventory,
ENVIRONMENTAL PROTECTION AGENCY 18 (Feb. 6, 2020) ................... 17

*The Role of Trade Secrets in Innovation Policy*,
CONGRESSIONAL RESEARCH SERVICE (Jan. 15, 2014),
https://tinyurl.com/yn3xy2d5 ............................................................. 23

S. Rep. No. 67, 114th Cong., 1st Sess. 24 (2015) .............................. 11, 17

Statement of Craig Morrison on Behalf of ACC Before the
Subcommittee on Environment & the Economy, U.S. House
of Representatives Regarding Sections 5 & 14,
https://tinyurl.com/593nthpy ............................................................. 23

Testimony of Craig Morrison on Behalf of ACC Before the
Subcommittee on Environment & the Economy, U.S. House
of Representatives Regarding Sections 5 & 14 of the Toxic
Substances Control Act at i (Jul. 11, 2013)
https://www.gpo.gov/fdsys/pkg/CHRG-
113hhrg86392/pdf/CHRG-113hhrg86392.pdf ................................... 20

"Trends in Proprietary Information Loss," ASIS International
(Sept. 2022) ........................................................................................ 21

TSCA Inventory Update Reporting Modifications: Chemical
Reporting, (76 Fed. Reg. 50815, 50825) (Sept. 15, 2011)) ................. 16

U.S. Chamber of Commerce, Comment Letter on EPA's
Proposed Rule regarding Confidential Business Information
Claims Under the Toxic Substances Control Act (TSCA)
(Jul. 11, 2022) ...................................................................................... 9

2020 Procedures for Review of Confidential Business
Information Claims for the Identity of Chemicals on TSCA
Inventory's Response to Comments (RTC) ................................... 16-17

3M Corporation, Comment Letter on EPA's Proposed Rule
    regarding Confidential Business Information Claims Under
    the Toxic Substances Control Act (TSCA) (Jul. 11, 2022).................23

# <u>GLOSSARY</u>

**CBI**: Confidential Business Information

**Chamber**: Chamber of Commerce of the United States of America

**EPA**: Environmental Protection Agency

**FEC:** Federal Election Campaign

**FOIA**: Freedom of Information Act

**NAM**: National Association of Manufacturers

**Rule**: 2023 Confidential Business Information Claims Under the Toxic Substances Control Act (TSCA)

**TSCA**: Toxic Substances Control Act

## STATUTES AND REGULATIONS

All applicable statutes and regulations are included in Petitioners'
addendum.

## INTEREST OF *AMICI CURIAE*[1]

The Chamber of Commerce of the United States of America
("Chamber") is the world's largest business federation. It represents
approximately 300,000 direct members and indirectly represents the
interests of more than 3 million companies and professional organizations
of every size, in every industry sector, and from every region of the country.
An important function of the Chamber is to represent the interests of its
members in matters before Congress, the Executive Branch, and the
courts. To that end, the Chamber regularly files *amicus curiae* briefs in
cases, like this one, that raise issues of concern to the nation's business
community.

The National Association of Manufacturers ("NAM") is the United
States' largest manufacturing association, representing small and large

---

[1] No counsel for any party authored this brief in whole or in part and
no entity or person, aside from *amici*, their members, or their counsel,
made any monetary contribution intended to fund the preparation or
submission of this brief. A motion for leave to file accompanies this brief.

1

manufacturers in all 50 states and in every industrial sector. Manufacturing employs nearly 13 million men and women, contributes $2.9 trillion to the U.S. economy annually, has the largest economic impact of any major sector, and accounts for over half of all private-sector research and development in the nation. The NAM is the voice of the manufacturing community and the leading advocate for a policy agenda that helps manufacturers compete in the global economy and create jobs across the U.S. The NAM frequently files *amicus curiae* briefs in cases, like this one, that raise issues of concern to the U.S. manufacturing industry.

*Amici* are well-situated to aid the Court's review of the Rule. Many of *amici*'s members operate within or in proximity to the chemical industry and are adversely impacted by the Rule,[2] which permits third-party waiver of confidential business information ("CBI") through reporting of non-confidential information. Without intervention by this Court, *amici*'s members will shoulder substantial and unlawfully imposed burdens to protect CBI from public disclosure.

---

[2] Confidential Business Information Claims Under the Toxic Substances Control Act (TSCA), 88 Fed. Reg. 37,155 (June 7, 2023) ("Rule").

2

**INTRODUCTION**
**AND SUMMARY OF ARGUMENT**

EPA's Rule unlawfully and unnecessarily risks disclosure of a company's confidential business information by a third party. In the preamble, EPA states that "if *any* submitting entity chooses not to assert and/or substantiate a confidentiality claim for a chemical identity as required by Toxic Substances Control Act (TSCA) § 14, the chemical identity is no longer entitled to confidential treatment and may be published on the public portion of the TSCA Inventory." 88 Fed. Reg. 37,158. This means that entities downstream from the original manufacturer of a chemical substance—like importers and processors that are also subject to TSCA's reporting requirements—could inadvertently waive the confidentiality of a substance's chemical identity over which a manufacturer has already asserted and substantiated a valid CBI claim.

The problem arises from the fact that downstream third parties often do not have access to the confidential information that EPA requires to substantiate a confidentiality claim. When they report to EPA, they may have only the chemical substance's non-confidential accession number and generic name. But under the Rule, it now appears their inability to produce more information will be deemed a waiver of confidentiality for all parties.

3

EPA itself recognized this risk of waiver in the preamble to the Rule. Nevertheless, it chose not to address the problem in this Rule. Instead, it simply says that it will address the issue at some indeterminate point in future rules. This is no solution.

EPA's decision is both unlawful and unwise. Allowing for potential waiver of confidentiality simply because a third party lacks the information to substantiate a confidentiality claim is contrary to the text of TSCA § 14. It is also arbitrary and capricious, as it is irrational and fails even to acknowledge the significant harms it causes.

## ARGUMENT

**I.  EPA itself recognizes that the Rule risks third-party waiver of a company's confidential business information claims.**

**A.  The Rule allows a company's confidential business information claims to be waived in downstream third-party reporting.**

TSCA requires EPA to maintain an inventory of existing chemicals manufactured, imported, and processed in the United States for non-exempt commercial purposes. To that end, TSCA sets up mandatory reporting requirements for a wide range of entities. For example, any entity that manufactures a new chemical substance or uses an existing chemical substance in a way that EPA considers to be a "significant new

4

use" must submit to EPA a pre-manufacture notice or a significant new use notice prior to manufacturing or importing the substance (or processing for significant new uses). 15 U.S.C. § 2604(a)(1). That includes downstream entities like importers and processors. *Id.*; 15 U.S.C. § 2602(9). Insofar as known to the entity, the notice must include the common or trade name, the chemical identity, and the molecular structure of the chemical substance. 15 U.S.C. § 2604(d); 15 U.S.C. § 2607(a)(2)(A). And that is just the tip of the reporting iceberg.[3]

When an entity reports information regarding a chemical substance to EPA, the entity can claim confidentiality for the submitted information, and seek to have EPA publish its chemical on the confidential portion of the TSCA Inventory. To do so, the reporting entity must assert a claim of confidentiality concurrent with submitting the information. 15 U.S.C. § 2613(c)(1)(A). The entity must then substantiate that claim with

---

[3] An entity would also be required to submit information regarding a chemical substance to EPA under the TSCA chemical data reporting rule (40 C.F.R. § 711), the Section 12(b) export notifications rule (40 C.F.R. § 707.65), the nanoscale materials reporting rule (40 C.F.R. § 704.20), the TSCA § 8(d) health and safety study reporting rule (40 C.F.R. § 716), and the manufacture or processing of "inactive" substances rule (40 C.F.R. § 710.25(c)), as well as in the context of substantial risk reporting required by TSCA § 8(e) (15 U.S.C. § 2607(e)).

"detailed written answers" regarding the harmful effects to the business's competitive position if the information were to be disclosed, the precautions the business has taken to protect the confidential information, whether the information constitutes a trade secret, and more. 15 U.S.C. § 2613(c)(1)(A-B); 40 C.F.R. § 211.30(b). If an entity wants to claim the specific chemical identity of the substance as confidential, additional substantiation requirements apply. 40 C.F.R. § 211.30(c). EPA assigns a non-confidential, five-digit accession number to each substance on the confidential portion of the TSCA Inventory. *See* 15 U.S.C. § 2607(b)(7).

The Rule, however, creates a new risk of disclosure for chemical identity information that a manufacturer has sought, in full compliance with these requirements, to keep confidential. The Rule now requires that every entity re-assert and substantiate a CBI claim for the specific chemical identity of a substance whenever the entity's TSCA submission contains or refers to a chemical substance already on the confidential portion of the Inventory. *See* 88 Fed. Reg. 37,167. That includes circumstances in which a submission merely *refers* to a chemical substance by non-confidential information, such as the chemical's generic name or accession number. *Id.* And "if no such claim accompanies the submission,

6

EPA will not recognize a confidentiality claim, and the information in or *referred to* in that submission may be made available to the public (*e.g.,* by publication of specific chemical name . . . on the public portion of the TSCA inventory) without further notice." *Id.* (emphasis added)

But downstream entities do not always have the information required to substantiate a CBI claim for a substance's chemical identity. Indeed, downstream importers or processors will often know only the chemical's generic name or its accession number—precisely because the manufacturer wishes to keep critical business information confidential.[4] The Rule thus creates substantial problems for a manufacturer seeking to keep chemical information confidential.

Consider, for example, Company M, a manufacturer that sells a chemical substance to Company P, a processor. Company M previously reported this substance to EPA and asserted a confidentiality claim, at which time the substance was placed on the confidential portion of the TSCA Inventory and assigned an accession number. As the manufacturer, Company M had all the information it needed to substantiate that

---

[4] Indeed, some downstream entities may not even be aware that an accession number signifies that the substance's chemical identity is CBI.

7

confidentiality claim. And consistent with Company M's desire to keep the chemical identity of its substance confidential, it provides only the substance's accession number in selling the substance to Company P.

Under TSCA § 2604(a)(1), Company P determines that it has a reporting requirement under EPA's Chemical Data Reporting Rule. *See* 40 C.F.R. § 711.8. Company P reports to EPA, as required, the information it obtained from Company M—the non-confidential accession number for the substance. Under the Rule, Company P's reporting of the substance's accession number qualifies as a reference to a confidential substance that requires re-substantiating the manufacturer's original CBI claim. 88 Fed. Reg. 37,167. But Company P does not have the information needed to do so. Thus, the processor's report could be deemed a waiver by EPA, which then could release the chemical identity on the public portion of the TSCA Inventory, regardless of the fact that it's the *manufacturer's* CBI claim for the chemical identity of the substance.

The same could be true if Company P obtained the chemical substance from Company I, an importer. If Company P must report to EPA prior to processing the substance—say, under the requirement for reporting for nanoscale materials—the same problem could arise. If

8

Company P reports only what it knows (the generic name and accession number), that is not enough to re-assert or re-substantiate a claim of confidentiality. 40 C.F.R. § 211.30. Under the Rule, EPA could interpret this report as waiving any existing CBI claim for the chemical identity of the substance. *See* 88 Fed. Reg. 37,167.

### B. EPA acknowledged this problem but failed to address the issue prior to implementing the Rule.

In the notice and comment process, EPA was told about this potential problem with the Rule. Among other entities, *amicus* Chamber of Commerce notified EPA of its concern that "[c]ompanies other than the original manufacturer may be able to inappropriately submit and waive protections of information regarding a particular chemical under the proposal." *See* U.S. Chamber of Commerce, Comment Letter on EPA's Proposed Rule regarding Confidential Business Information Claims Under the Toxic Substances Control Act (TSCA) (Jul. 11, 2022).

EPA, in turn, acknowledged this risk of third-party waiver of CBI. 88 Fed. Reg. 37,158. It specifically identified "commenters' concern [regarding] instances where the chemical identity is reported by accession number (a non-confidential identifier) and no chemical identity CBI claim is asserted, with the result that the specific chemical identity is moved to

9

the public Inventory." *Id.* EPA explained that it "considered the commenters' concerns that an entity lacking knowledge of a specific chemical identity may nonetheless waive confidentiality for that chemical identity" and that it "recognize[d] this issue might arise in specific contexts." *Id.*

But EPA declined to address the acknowledged problem. Instead, it simply said it would do so at some unspecified time in the future. Specifically, EPA stated it would address the issue of inadvertent third-party waiver "in specific TSCA reporting rules that take into account the reporting entity's potential lack of knowledge, where such measures are necessary." *Id.* As an example, EPA pointed to the proposed PFAS Reporting Rule under TSCA § 8(a)(7), which has since become final, regarding reporting requirements for PFAS substances where it "sought to clarify and add language . . . based in part on comments received during the public comment period for today's final rule and concerning an entity's knowledge of a specific chemical identity." *Id.*

## II. EPA's promise to address this problem in future rules is contrary to TSCA § 14.

### A. TSCA § 14 prohibits what EPA has done here.

There is no legal basis under TSCA for allowing an ongoing risk of

disclosure of confidential business information. The text of TSCA § 14(a) and (d) forecloses any argument that a third party's non-substantiation of CBI waives a manufacturer's properly substantiated CBI claim. These provisions set forth the precise and limited circumstances in which disclosure of a substance's CBI is allowed, and third-party non-substantiation is not among them. Likewise, the text of TSCA § 14(e) bars the argument that a third party's failure to re-substantiate CBI constitutes a voluntary withdrawal. TSCA § 14(e) delineates the sole circumstances in which an existing CBI claim can be terminated, and it does not include that scenario.

*First*, TSCA § 14(a) and (d) unambiguously foreclose disclosure by EPA of confidential information simply because a downstream entity lacks sufficient information to re-assert or re-substantiate the need for confidentiality. Section 14(a) states that EPA "shall not disclose information that is exempt from disclosure" under the Freedom of Information Act (FOIA) *"[e]xcept as provided in this section."* 15 U.S.C. § 2613(a); *see also* S. Rep. No. 67, 114th Cong., 1st Sess. 5 (2015) ("Section 14 of TSCA provides an affirmative, broad statement of protection from disclosure for" CBI). As relevant here, FOIA exempts from disclosure

"trade secrets and commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4). Thus, TSCA § 14(a) sets forth a default rule of non-disclosure for validly asserted and substantiated CBI claims.

Subsection (d) of TSCA then designates an exhaustive list of nine exceptions under which information described in subsection (a) either must or shall be disclosed. They include when such information is necessary for a specific federal law enforcement purpose or when EPA determines its disclosure is necessary to protect the environment against unreasonable risk of injury. 15 U.S.C. § 2613(d)(1),(3). But none of the exceptions authorizes disclosure simply because a third party reported a chemical substance's non-confidential accession number or generic name to EPA.

In *Arellano v. McDonough*, the Supreme Court confronted a statute with a materially similar structure and concluded that an exhaustive list of exceptions necessarily forecloses any other exceptions. 598 U.S. 1, 4 (2023) (discussing 28 U.S.C. § 5110). Like TSCA § 14, the statute at issue in *Arellano* included a default rule regarding the effective date of veterans' benefits, which applied "[u]nless specifically provided otherwise in this

12

chapter." *Id.* at 8. The Court held that the "unless" clause indicates "that Congress enumerated an exhaustive list of exceptions, with each confined to its specific terms." *Id.* at 8.

The Court rejected the argument that the one-year timeline for an exception under § 5110(b)(1) should be equitably tolled when determining the effective date of the plaintiff's benefits. *Id.* at 5–6, 8 ("The structure of § 5110 reinforces Congress's choice to set effective dates solely as prescribed in the text ... There are 16 such exceptions—and equitable tolling is not on the list."). The Court reasoned that if Congress had wanted equitable tolling to be an option, it would not have "spelled out a long list of situations in which a claimant is entitled to adjustment—and instructed the VA to stick to the exceptions 'specifically provided.'" *Id.* at 9.

In *Stockman v. Fed. Election Com'n*, the Fifth Circuit ruled similarly with respect to the Federal Election Campaign Act ("Campaign Act"), which gives the Federal Election Campaign ("FEC") "exclusive jurisdiction" with respect to civil enforcement of the Act. 138 F.3d 144, 152 (5th Cir. 1998). The Campaign Act states that "[e]xcept as provided in section 437g(a)(8) of this title," the FEC's jurisdiction over claims to enforce the Act "shall be the exclusive civil remedy." *Id.* at 153 (citing 2

13

U.S.C. § 437d(e)). The Fifth Circuit held that "[t]he Campaign Act sets forth only two exceptions to the FEC's 'exclusive jurisdiction' under the Act" and that "Congress could not have spoken more plainly in limiting the jurisdiction of federal courts to adjudicate claims under the [Campaign Act]." *Id.* (quoting *Perot v. FEC*, 97 F3d. 553, 559 (D.C. Cir. 1996)). The court went on to explain that the *expressio unius* doctrine "clearly compel[s] the conclusion that the remedies created in [the Act] are the exclusive means to enforce the duties and obligations imposed by the Act." Id. at 154 (quoting *Nat'l R.R. Passenger Corp. v. Nat'l Ass'n of R.R. Passengers*, 414 U.S. 453, 458 (1974)).

Here, EPA likewise lacks the discretion to recognize additional exceptions in the statute. Yet that is exactly what EPA did here. EPA's Rule improperly recognizes an additional exception for disclosure of already substantiated CBI —*i.e.*, when a third party submits the accession number or generic name of a substance—that Congress did not include.

***Second***, TSCA also prohibits EPA from deeming the third party's actions as a withdrawal or termination of an existing confidentiality claim. TSCA § 14(e) specifically addresses the termination of a confidentiality claim. EPA is required to protect certain information, including the

14

chemical identity of substances claimed as confidential, from disclosure for ten years unless 1) the person that asserted the claim notifies EPA that the person is withdrawing the claim, or 2) EPA becomes aware that the information does not qualify for protection from disclosure under this section. 15 U.S.C. § 2613(e)(1).

The provision thus enumerates the exclusive ways in which a CBI claim can be terminated—and termination through a third party's reporting of a substance's accession number is not included. The first circumstance would require the manufacturer or whatever entity first asserted confidentiality—not a later-in-time, downstream third party—to withdraw the claim. The second circumstance is limited, by its own terms, to situations where EPA later learns that information is not protectable "under this section." That is a clear reference to TSCA § 14(b), which lists a number of types of information "not protected from disclosure," including mixed confidential, nonconfidential information, and information from health and safety studies. Neither of these exceptions to TSCA § 14(e) permits EPA to terminate a confidentiality claim simply because a third party reported a substance's accession number or generic name.

**B.   EPA's attempts to justify its decision under TSCA are not responsive.**

In the preamble to the Rule, EPA argues that it "has consistently maintained and provided public notice of its position that if *any* submitting entity chooses not to assert and/or substantiate a confidentiality claim for a chemical identity as required by TSCA section 14, the chemical identity is no longer entitled to confidential treatment and may be published on the public portion of the TSCA Inventory." 88 Fed. Reg. 37,158.

EPA points to previous rules that stated that failure to assert and substantiate a CBI claim upfront waived any CBI claim to chemical identity. *Id.* (citing TSCA Inventory Update Reporting Modifications: Chemical Reporting, (76 Fed. Reg. 50,815, 50,825) (Sept. 15, 2011)). It also points to a previous rule that stated: "[i]f another person reveals to the public that a confidential chemical substance is manufactured or processed . . . in the United States, then the specific chemical identity would no longer be eligible for confidential protection, and CBI claims for that specific chemical identity would be denied upon review." *Id.* (quoting 2020 Procedures for Review of Confidential Business Information Claims for the Identity of Chemicals on TSCA Inventory's Response to Comments

16

(RTC)).[5]

But none of these rules addresses the specific circumstance that *amici* have raised. These rules speak only to situations where 1) an entity with knowledge of confidential information fails to properly assert and substantiate a CBI claim, or 2) once-confidential information has been made public. In contrast, *amici* are concerned with the risk of disclosure for existing CBI for a chemical identity that has *never* been publicly disclosed, or even shared with a third party. Under the Rule, EPA suggests a third party can waive a CBI claim even when it reveals no confidential information at all and reports nothing more than the substance's non-confidential accession number or generic name. No previous rule has

---

[5] EPA made a similar statement in its Response to Comments to the Proposed Rule and Supplemental Rule-Procedures for Review of CBI Claims for the Identity of Chemicals on the TSCA Inventory, ENVIRONMENTAL PROTECTION AGENCY 18 (Feb. 6, 2020), where it noted that it would deny CBI claims where "there are multiple . . . submitters reporting the same chemical substance, and at least one submitter waived its CBI claim by declining to seek to maintain the CBI claim for the specific chemical identity." The rationale EPA offers for this position is that information that is already public cannot be claimed as confidential. *Id.* (citing 40 C.F.R. § 2.208 (a business can only claim information as confidential if "[t]he information is not, and has not been, reasonably obtainable without the business's consent by other persons"); S. Rep. No. 67, 114th Cong., 1st Sess. 24 (2015) (explaining that "information that is … already publicly available cannot be newly protected as CBI under TSCA")).

allowed this.

EPA's proffered justification is entirely non-responsive and inadequate. The only issue here is whether EPA may publicly disclose a substance's confidential chemical identity when a third party refers to the substance by accession number in a report without substantiating a separate CBI claim. And as discussed above, there is no statutory or regulatory basis to allow EPA to take such an action—even for a temporary period of time.[6]

## III. EPA's promise of a future solution is also arbitrary and capricious.

"A rule is arbitrary and capricious if the agency: (1) has relied on factors which Congress has not intended it to consider, (2) entirely failed to consider an important aspect of the problem, (3) offered an explanation for its decision that runs counter to the evidence before the agency, or (4) is so implausible that it could not be ascribed to a difference in view or the

---

[6] Although this Court need not decide the broader question of whether a third party can waive an entity's CBI claim in situations where a third party *does* have access to the confidential chemical identity, the lawfulness of waiver in that context is at best questionable. There is no such basis for disclosure under TSCA § 14 (a) or (d). Likewise, there is no provision in TSCA § 14(e) allowing for termination of an existing CBI claim in such a situation.

18

product of agency expertise." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). "The agency must explain the evidence which is available, and must offer a 'rational connection between the facts found and the choice made.'" *Id.* (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962)). For the reasons below and those advanced by Petitioners, *see generally* Petitioners' Br. 27-39, EPA's proposal to offer a future solution is arbitrary and capricious.

### A.   The Rule's creation of a risk of waiver is irrational and unreasonable.

The Rule allows EPA to publicly disclose a substance's confidential chemical identity when a third party reports its use of the substance using the substance's non-confidential accession number. That approach makes no sense. EPA issues an accession number when the original submitting entity asserts and substantiates a valid CBI claim. The very purpose of the accession number is to *mask* the substance's true chemical identity in order to maintain its confidentiality. Yet EPA would deem a third party's report of the accession number a license to publicly disclose the CBI itself.

It is also unreasonable to acknowledge that a Rule *creates* a problem, that the problem will occur under the Rule, and yet delay any solution to a promised future rulemaking. EPA justified its refusal by stating that the

19

Rule "addresses a wide variety of situations where the . . . issue is not presented." 88 Fed. Reg. 37,158. That may be true. But what about the situations where the issue *is* present? EPA provides no answer.

*Amici* recognize that EPA does not need to solve all previously existing problems when issuing a rule. *Star Wireless, LLC v. Fed. Commc'ns Comm'n*, 522 F.3d 469, 475 (D.C. Cir. 2008) ("[A]n agency need not address all problems at once. Instead, its rules may solve first those problems it prioritizes."); *U.S. Cellular Corp. v. Fed. Commc'ns Comm'n*, 254 F.3d 78, 86 (D.C. Cir. 2001) ("[R]eform may take place one step at a time, addressing itself to the phase of the problem which seems most acute to the [regulatory] mind.") (quoting *Williamson v. Lee Optical Co.*, 348 U.S. 483, 489 (1955)). But that is a different thing entirely from *creating* a problem in a Rule and refusing to resolve it. *Am. Tel. & Tel. Co. v. FCC*, 978 F.2d 727, 733 (D.C. Cir. 1992) (finding an agency's action arbitrary and capricious when it dismissed a stakeholder's complaint "with only a promise to address the legal issue it raised in a future rulemaking"). To do that is quintessentially arbitrary and capricious.

## B. EPA fails to acknowledge or address the significant harms caused by its Rule.

By its own admission, EPA's Rule leaves companies' confidential

information at risk of being publicly disclosed. This will inflict substantial harm on the economy. Protection of CBI is fundamental to fostering innovation and economic development in all areas of the economy, including the chemical industry.

Trade secrets are a widely acknowledged and essential part of business, regardless of sector. Katherine Linton, *The Importance of Trade Secrets: New Directions in International Trade Policy Making and Empirical Research*, U.S. INT'L TRADE COMM. J. OF INT'L COMM. AND ECON. 2 (Sept. 2016)[7] ("According to survey evidence from the United States and other developed countries, large and small firms in a wide variety of industry sectors are more likely to rate trade secrets as 'very important' than all other types of IP protection."). Firms lose over 50 billion dollars each year from theft of trade secrets. "Trends in Proprietary Information Loss," ASIS International (Sept. 2022). Trade secrets are among the most valuable corporate assets of a business. David H. Siegel, *The Way to Protect Your Business? What You Need to Know About Trade Secrets*, THE NATIONAL LAW REVIEW (Jun. 24, 2022).[8] Federal and state case reports are

---

[7] https://tinyurl.com/ypr65yvz.

[8] https://tinyurl.com/ysdm884n.

full of opinions addressing trade secret litigation. *PPG Indus. v. Jiangsu Tie Mao Glass Co.*, 47 F.4th 156 (3d Cir. 2022); *Synopsys, Inc. v. Risk Based Sec., Inc.*, 70 F.4th 759 (4th Cir. 2023); *Bimbo Bakeries USA, Inc. v. Sycamore,* No. 213-cv-00748 (DN) (DBP), 2018 WL 1578115 (D. Utah Mar. 29, 2018); *Balmuccino, LLC v. Starbucks Corp.*, No. 2:22-cv-01501 (JHC), 2023 WL 4761447 (W.D. Wash. July 26, 2023); *DT-Trak Consulting, Inc. v. Kolda*, 979 N.W.2d 304 (S.D. 2022); *Praeses, LLC v. Bell*, 343 So.3d 933 (La. Ct. App. 2022). And there are provisions throughout the U.S. Code— from the FOIA to the Defend Trade Secrets Act of 2016—that give protection to trade secrets.

The reason is obvious. CBI allows companies to design innovative products without the immediate availability of those designs to competitors. *See Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1003–04 (1984) (holding that trade secrets are private property protected by the Taking Clause of the Fifth Amendment); John Hull, *Protecting trade secrets: how organizations can meet the challenge of taking "reasonable steps,"* WORLD INTERNATIONAL PROPERTY ORGANIZATION MAGAZINE (Oct. 2019)[9] ("Trade secrets are widely used by businesses across the economy

---

[9] https://tinyurl.com/ycxtmhvt.

to protect their know-how and other commercially valuable information and thereby promote competitiveness and innovation."). The competitive strength of many sectors in the economy rests on the ability of companies to protect their trade secrets. *See The Role of Trade Secrets in Innovation Policy*, CONGRESSIONAL RESEARCH SERVICE (Jan. 15, 2014).[10]

This is true in all industries and no less so in the chemical industry, a sector of the economy that generates $639 billion annually and supports over 25% of the country's gross domestic product.[11] Innovation is essential to the chemical manufacturing industry and the downstream industries that it supplies.[12] Competitive markets rely on chemical companies to develop innovative solutions and bring new products to market. This involves creating new chemical substances and using existing substances in novel ways to solve problems. As a necessary and essential part of this

---

[10] https://tinyurl.com/yn3xy2d5.

[11] *The Business of Chemistry by Numbers*, AMERICAN CHEMISTRY COUNCIL, https://tinyurl.com/52cwv5zh (last visited Oct. 20, 2023).

[12] *See* Statement of Craig Morrison on Behalf of ACC Before the Subcommittee on Environment & the Economy, U.S. House of Representatives Regarding Sections 5 & 14 of the Toxic Substances Control Act at 6 (July 11, 2013), https://tinyurl.com/593nthpy.

23

process, companies develop new information unique to their product, such as chemical identity, which they guard as CBI. If the confidential information used to create innovative chemistries is freely available to competitors, companies will be disincentivized to invest millions of dollars to develop new chemical products.

In fact, Congress expressly acknowledged the importance of protecting CBI to innovation in the chemical industry. One of the explicit policies of TSCA is to ensure that "authority over chemical substances and mixtures should be exercised in such a manner as not to impede unduly or create unnecessary economic barriers to technological innovation." *See* 15 U.S.C. § 2601(b)(3). TSCA also provides for criminal penalties for unlawful disclosure of CBI. 15 U.S.C. § 2615(b).

Although EPA now dismisses the problem of CBI disclosure in the TSCA context, it too has previously acknowledged the harm that results from disclosure of CBI. In 2017, EPA issued a rule that, to the surprise of the chemical industry, resulted in hundreds of confidential chemicals being moved to the public portion of the TSCA Inventory.[13] In response,

---

[13] *See* Prepublication Notice, TSCA Inventory Notification (Active-Inactive); Reopening of the Reporting Period (Jan. 5, 2021) at 3, Dck. No. EPA-HQ-OPPT-2016-0426, https://tinyurl.com/yc5zptf2.

24

EPA proposed to reopen the submission period so that submitters could correct their submissions if they made errors that undermined existing CBI claims. *Id.* at 5. EPA explained that it was taking this step because "inaction may cause financial injury to certain entities in the regulated community" who informed EPA that they would "lose the confidential treatment of chemical identities unless [EPA] reopens the reporting period." *Id.* It is arbitrary and capricious for EPA now to ignore the prospect of financial harm to private parties that the agency properly considered just a few years ago.

## **CONCLUSION**

The Court should grant the Petition for Review.


Respectfully submitted,

/s/   Elbert Lin

25

Andrew R. Varcoe
Stephanie A. Maloney
U.S. Chamber Litigation Center
1615 H Street, NW
Washington, DC 20062
(202) 463-5337

Counsel for *Amicus Curiae* Chamber of Commerce of the United States

Erica Klenicki
Michael A. Tilghman II
NAM Legal Center
733 Tenth Street, NW
Suite 700
Washington, DC 20001

Counsel for *Amicus Curiae* National Association of Manufacturers

Elbert Lin
  *Counsel of Record*
Hunton Andrews Kurth LLP
951 East Byrd Street, East Tower
Richmond, VA 23219
elin@huntonak.com
(804) 788-8200

Matthew Z. Leopold
Erica N. Peterson
Hunton Andrews Kurth LLP
2200 Pennsylvania Ave. NW
Washington, DC 20037
(202) 419-2057

Counsel for *Amici Curiae*

November 15, 2023

26

## CERTIFICATE OF COMPLIANCE

This brief contains 4,646 words excluding the parts of the brief that Federal Rule of Appellate Procedure 32(f) and D.C. Circuit Rule 32(e)(1) exempt. The brief thus complies with Federal Rules of Appellate Procedure 32(g) and 29(a)(5), as well as D.C. Circuit Rule 32(e)(3), because the word count does not exceed the 6,500 words permitted under those rules.

The brief also complies with Federal Rule of Appellate Procedure 32(a)(5)'s typeface requirements and Federal Rule of Appellate Procedure 32(a)(6)'s type style requirements because the brief has been prepared in a proportionally spaced type-face using Microsoft Word in Century Schoolbook 14-point font.

## CERTIFICATE OF SERVICE

I hereby certify that, on November 15, 2023, I electronically filed the foregoing brief with the Clerk of the Court for the U.S. Court of Appeals for the District of Columbia Circuit via the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by that system.

/s/ __Elbert Lin_____
Counsel for *amici curiae*

27